UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DONNA DESENA,

                Plaintiff,                                    **REPORT AND**
                                                                **RECOMMENDATION**
                                                                21-CV-02090 (JS)(JMW)

       -against-

TARGET CORPORATION, HEMPSTEAD
TURNPIKE LLC, and DAVID MINKIN
MANAGEMENT CO., INC.,

                Defendants.
------------------------------------------------------------X

**A P P E A R A N C E S:**


**Paul R Pepper**
Morici & Morici, LLP
1399 Franklin Avenue
Suite 202
Garden City, NY 11530
*For Plaintiff*

      -and-

**Ian E. Hannon**
Simmons Jannace DeLuca, LLP
43 Corporate Drive
Hauppauge, NY 11788
*For Defendant Target Corporation*

*No appearances for Defendants Hempstead Turnpike LLC
and David Minkin Mgt. Co., Inc.*

**WICKS,** Magistrate Judge:

> *A civil case, at law or in equity, presenting a controversy between citizens of different States and involving the requisite jurisdictional amount, is one which may be removed from a state court into the District Court of the United States by the defendant, if not a resident of the State in which the case is brought, § 28 Jud. Code; and this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy . . . . In such a case a resident defendant is joined, the joinder, although fair upon its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal; but the showing must consist of a statement of facts rightly leading to that conclusion apart from the pleader's deductions.*[1]

This case is here by removal, premised solely upon diversity of citizenship. (DE 1.) The problem, however, is that there is no dispute that Defendants Hempstead Turnpike LLC ("Hempstead Turnpike") and David Minkin Management Co., Inc. ("Minkin Management") are citizens of New York—the same as Plaintiff. On its face, therefore, their presence destroys diversity of citizenship, and thereby would deprive the federal courts of subject matter jurisdiction under 28 U.S.C. § 1332, thus defeating Defendant Target's petition for removal. *See* 28 U.S.C. § 1441. The question remains whether these non-diverse Defendants are merely a Potemkin Village of sorts. That is, whether the naming of these Defendants was done to defeat federal jurisdiction and Defendant Target's right of removal by merely joining as Defendants parties with no real connection with the controversy.

Plaintiff Donna Desena commenced this state law premises liability action against Defendants Target, Hempstead Turnpike and Minkin Management, alleging that the Defendants' negligence in maintaining a shopping cart corral led to Plaintiff's injury when she tripped over the corral and fell. Defendant Target timely removed the action to this Court contending that, although Defendants Hempstead and Minkin Management—who, like Plaintiff, are citizens of New York—destroy complete diversity, this Court nonetheless has subject matter jurisdiction based on Plaintiff's fraudulent joinder of Defendants Hempstead and Minkin Management. (DE 1.)

---

[1] *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

Now before the Court, on referral from the Honorable Joanna Seybert, is Plaintiff's motion for remand and costs (DE 5), which is grounded in the contention that Defendant Target failed to establish through "clear and convincing" evidence that there was a fraudulent joinder and that, therefore, subject matter jurisdiction is lacking. Defendant Target, striking back, strenuously opposes Plaintiff's motion, asserting that it has indeed established fraudulent joinder. For the reasons that follow, the undersigned respectfully recommends that Plaintiff's motion be denied in its entirety. Moreover, the undersigned respectfully recommends the Court, *nostra sponte*, dismiss all claims asserted against Defendants Hempstead and Minkin Management.

## BACKGROUND

Plaintiff alleges that she tripped and fell over a cart return railing in the parking lot of 3850 Hempstead Turnpike in Levittown, New York ("3850 Hempstead") on March 24, 2019. (DE 1-1 ¶¶ 6, 11, 13.) Plaintiff alleges that Defendant Target was the tenant of 3850 Hempstead, that Defendant Hempstead Turnpike owned, operated, controlled, maintained, and supervised 3850 Hempstead, and that Defendant Minkin Management was the management company responsible for the maintenance of the parking lot and cart return areas of 3850 Hempstead. (*Id.* ¶¶ 5–7.) Plaintiff additionally alleges that Defendants were negligent in their maintenance of the cart return station, which led to Plaintiff's accident and injuries. (*Id.* ¶ 13.)

On April 16, 2021, after learning that Plaintiff claimed to require a total right knee replacement, Defendant Target removed this matter to this Court. (DE 1.) In its notice of removal, Defendant Target states that there is complete diversity between it and Plaintiff, as Defendant Target is a citizen of Minnesota and Plaintiff is a citizen of New York. (*Id.* ¶ 7.) Although acknowledging that Defendants Hempstead Turnpike and Minkin Management destroy complete diversity given their New York citizenship, Defendant Target nonetheless asserts that removal is proper based on a theory of fraudulent joinder. (*Id.* ¶¶ 9, 12.) Specifically, Defendant Target contends that "Plaintiff sued [Defendants Hempstead Turnpike and Minkin Management] solely in an effort to destroy diversity jurisdiction," particularly because Defendant

Hempstead Turnpike "transferred all rights, title and interests it had in the premises on June 25, 2018, almost a year before [P]laintiff's alleged accident." (*Id.* ¶ 10.)

On June 7, 2021, Plaintiff filed the present motion seeking to remand this matter back to state court, principally arguing that Defendant Target has failed to establish fraudulent joinder. (DE 5, 6.) Defendant Target opposes Plaintiff's motion in its entirety and wishes to defend this case in federal court. (DE 9, 10.) Defendants Hempstead Turnpike and Minkin Management appear to have not joined on Defendant Target's opposition. On March 15, 2022, the Honorable Joanna Seybert referred the present motion to the undersigned for a Report and Recommendation. (Electronic Order dated Mar. 15, 2022.)

## LEGAL STANDARD

It is axiomatic that federal courts are of limited jurisdiction and "possess[] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts generally therefore may entertain cases falling into two subject matter categories: cases involving a federal question, 28 U.S.C. § 1131, and cases where parties are citizens of different states and the amount in controversy exceeds $75,000, 28 U.S.C. § 1132. "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Where, as here, an action is removed to federal court based on diversity of citizenship jurisdiction, "'complete diversity'" must exist, meaning that "all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)). Where an action is removed and the removal is challenged, the burden rests with the removing party to establish that federal subject matter jurisdiction exists, keeping in mind that the "'federal courts construe the removal statute narrowly, resolving any doubts against removability.'" *Ferreira v. N.Y. Daily News*, No. 08-CV-1520 (RRM)(MDG), 2009 WL 890577, at *2 (E.D.N.Y. Mar. 31, 2009) (quoting *Thomas v. Baldwin*, 189 F. Supp. 2d 1, 2 (E.D.N.Y. 2002)); *see Percy v. Oriska Gen. Contracting*, 20-cv-6131 (NGG), 2021 WL 2184895, at *5 (E.D.N.Y. May 27, 2021)

4

("On a motion to remand to state court, 'the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof.'") (citation omitted). Thus, the burden here lies with Defendant Target.

Although complete diversity is required to sustain diversity jurisdiction in removed cases, "[t]he doctrine of fraudulent joinder permits courts to overlook the presence of non-diverse defendants if they were fraudulently joined in an effort to defeat federal jurisdiction." *Abruzzo Docg Inc. v. Acceptance Indem. Ins. Co.*, 20-CV-4160 (MKB), 2021 WL 5304058, at *8 (E.D.N.Y. Nov. 15, 2021) (citing *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010)); *see Patafil v. Walmart, Inc.*, Civ. No. 3:21CV00433(SALM), 2021 WL 5480712, at *2 (D. Conn. Nov. 23, 2021) (noting that, in "limited circumstances, a named defendant may be disregarded in determining diversity under the doctrine of fraudulent joinder") (internal quotation marks and citation omitted). The ability to remove on the ground of fraudulent joinder "is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction. Under the doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004); *see Abruzzo Docg Inc.*, 2021 WL 5304058 at *8 (noting that, to establish fraudulent joinder, "the party asserting jurisdiction must demonstrate, by clear and convincing evidence, either (1) 'outright fraud' in the plaintiff's pleadings[;] or (2) that there is 'no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court'") (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)); *Gerbo v. Kmart Corp.*, No. 14-CV-4866, 2015 WL 6691603, at *2 (E.D.N.Y. Nov. 3, 2015) ("A defendant must establish by clear and convincing evidence that a plaintiff's pleadings contain some false set of facts in order to prove fraud in the pleadings.") (citation omitted). Courts have recognized that a removing party's burden of establishing fraudulent joinder is a heavy one, "with all factual and legal ambiguities resolved in favor of plaintiff." *Briarpatch Ltd., L.P*, 373 F.3d at 302 (citing *Pampillonia*, 138 F.3d at 461). In assessing fraudulent joinder, courts may "look beyond the face of the complaint to all

5

affidavits filed by the plaintiffs and defendants in support of their motions." *B.N. ex rel. Novick v. Bnei Levi, Inc.*, No. 12–CV–5057, 2013 WL 168698, at *2 (E.D.N.Y. Jan. 15, 2013) (collecting cases).

Thus, it is against this backdrop—Target bearing the burden of establishing by clear and convincing evidence that joinder was fraudulent—that the Court considers the application.

## **DISCUSSION**

The parties do not dispute that Defendants Hempstead Turnpike and Minkin are considered citizens of New York and thus, as mentioned at the outset, at first blush destroy complete diversity. (DE 1 ¶ 8.) Rather, the core of the present dispute is whether Defendant Target properly removed this action based on the purported fraudulent joinder of Defendants Hempstead Turnpike and Minkin Management. Specifically, Defendant Target's notice of removal and memorandum in opposition assert that removal based on fraudulent joinder is appropriate because Defendants Hempstead Turnpike and Minkin Management owed no duty to Plaintiff at the time of the incident, meaning that it is impossible for Plaintiff to maintain this action against Defendants Hempstead Turnpike and Minkin Managememt in state court.[2] Plaintiff, in support of remand, contends that Defendant Target has failed to meet its burden of proving by clear and convincing evidence that Plaintiff cannot maintain a valid state law claim against Defendants Hempstead Turnpike and Minkin Management and, as such, remand is warranted.

In support of its opposition to Plaintiff's remand motion, Defendant Target relies on numerous documents which, in its view, evidence Defendant Target's sole control of the premises where the alleged incident occurred. Specifically, Defendant Target provides a Ground Lease which Defendant Target entered into with Starwood Ceruzzi Bethpage LLC ("Starwood") on January 19, 1999. (*See generally* DE 9-1.) The Ground Lease was, in truth, a sublease to a lease between Starwood and the David Minkin Trust. (*Id.* at 11, 83.) On January 6, 2003, Starwood transferred its rights and interest in the property—including its rights under the Ground Lease—to S&S Levittown, LLC. (DE 9-2.) The David Minkin Trust then

---

[2] There is no indication that Defendant Target alleged "outright fraud" in support of its fraudulent joinder removal.

transferred its eighty-five percent ownership interest in the premises to Defendant Hempstead Turnpike on March 3, 2004.  (DE 5-4 at 18–22.)  Defendant Hempstead Turnpike then became the sole owner of the premises when Financial Investments L.P. transferred its fifteen percent interest in the premises.  (*Id.* 23–28.)  Finally, on June 25, 2018, Defendant Hempstead Turnpike transferred its entire interest in the premises to Hempstead Turnpike GST LMO 8, LLC.  (DE 5-3.)

The Operating Easement Agreement ("OEA"), which is incorporated into the operative Ground Lease, affords Defendant Target the ability to "take over and assume the maintenance of the Common Area upon the Target Tract of the premises."  (DE 9-1 at 118.)  On September 1, 2009, Defendant Target exercised its right to assume sole operation and maintenance of the common area on its tract and opted out of the common area liability insurance program offered by the shopping center.  (DE 9-3.)  Accordingly, as stated in an affidavit from Defendant Target's "PML,"[3] Donald McCabe, Defendant Target currently maintains the shopping cart corrals in the parking lot and did so on March 24, 2019.  (DE 9-4 ¶¶ 3–5.)  Moreover, Mr. McCabe states that Defendant Target "does not utilize Hempstead Turnpike LLC or David Minkin Management Co., Inc. to maintain [its] parking lot or its shopping cart corrals."  (*Id.* ¶ 6.)

Based upon the submissions both in support and in opposition of the motion to remand, Defendant Target has indeed established by clear and convincing evidence that Plaintiff fraudulently joined Defendants Hempstead Turnpike and Minkin Management and, thus, remand is appropriate.  To be clear, the Court finds no indication that the joinder by Plaintiff was any sort of legal legerdemain or outright fraud, but rather that there is no possibility that Plaintiff can state a cause of action against the two non-diverse Defendants in state court.

The property documents provided by Defendant Target establish that Defendant Hempstead Turnpike transferred its entire interest in the premises to Hempstead Turnpike GST LMO 8, LLC on June 25, 2018. (DE 5-3.)  Thus, contrary to Plaintiff's allegations, Defendant Hempstead Turnpike did not own,

---

[3] Although Mr. McCabe does not define "PML," he does state that his "duties include conducting and overseeing routine maintenance of [Defendant Target's] Levittown store," which "includes the maintenance of the store's parking lot."  (DE 9-4 ¶¶ 2–3.)

7

operate, control, maintain, or supervise 3850 Hempstead on March 24, 2019, the date of the alleged incident. (*Compare* DE 1-1 ¶ 6 *with* DE 5-3.) And, aside from the lone allegation that Defendant Minkin Management was the management company responsible for the maintenance of the parking lot and cart return area of 3850 Hempstead (DE 1-1 ¶ 7), the property documents before the Court are devoid of any mention of Defendant Minkin Management.[4] Moreover, the affidavit of Mr. McCabe—Defendant Target's PML responsible for maintaining Defendant Target's parking lot—makes clear that Defendant Target did not utilize Defendant Minkin Management to maintain the parking lot or shopping cart corrals. (DE 9-4 ¶ 6.) Plaintiff—apparently having forgone her opportunity to reply to Defendant Target's arguments and submit evidence of her own—has wholly failed to rebut Defendant Target's showing.[5]

Even assuming, *arguendo*, that Defendants Hempstead Turnpike and Minkin Management owned or operated 3850 Hempstead, Plaintiff's claims against them would nonetheless be without merit. The law on the liability of out-of-possession landlords in New York is settled and clear. "Under New York law, an out-of-possession property owner is not liable for injuries that occur on the property unless the owner 'retained control over the property or is obligated by contract to perform repairs or maintenance.'" *Battaglia v. Shore Parkway Owner LLC*, 249 F. Supp. 3d 668, 671 (E.D.N.Y. 2017) (quoting *Grippo v. City of N.Y.*, 45 A.D.3d 639, 640, 846 N.Y.S.2d 264, 265 (2d Dep't 2007)). Moreover, "'[a] landlord's limited right of re-entry does not give rise to liability, unless there exists a significant structural or design defect which violates a specific statutory provision.'" *Schulman v. MyWebGrocer, Inc.*, No. 14–CV–7252 (ENV)(RML), 2015 WL 3447224, at *2 (E.D.N.Y. May 28, 2015) (quoting *Gavallas v. Health Ins. Plan of Greater N.Y.,* 35 A.D.3d 657, 657, 829 N.Y.S.2d 131 (2d Dep't 2006)).

---

[4] Indeed, as Defendant Target suggests, it appears as though Plaintiff named Defendant Minkin because of its similarity to a former owner of 3850 Hempstead, the David Minkin Trust. (*See* DE 9-1 at 83.)

[5] Plaintiff largely focuses on Target's answer to Defendants' Hempstead Turnpike's and Minkin Management's counter claims, asserting that Target effectively admitted that Plaintiff's claims against Defendants Hempstead Turnpike and Minkin Management were properly asserted. (DE 10 at 9.) Target's denials of the claims for indemnity, although seemingly inconsistent in this context, do not alone overcome the Court's conclusion that no viable claims in state court would exist against the non-diverse defendants.

Here, Defendant Target relies on the Ground Lease which belies Plaintiff's allegations that Defendants Hempstead Turnpike and Minkin Management maintain, control, repair, and supervise the parking lot, including the shopping cart return area. (DE 1-1 ¶ 12.) The Ground Lease provides that:

> [Defendant Target] agrees throughout the Term, at [Defendant Target's] sole cost and expense, to keep and maintain . . . and make all necessary replacements to [Defendant Target's] Improvements and the Premises[.]

(DE 9-1 § 7.3.)[6]

This is not contradicted in any way by Plaintiff's submissions. The documents further establish that on September 1, 2009, Defendant Target assumed sole responsibility of the "Common Area" on its tract, pursuant to Section 4.2(G) of the OEA. (DE 9-3; *see* DE 9-1 at 118 (affording Defendant Target the right, upon sixty-days written notice, "to take over and assume the maintenance of the Common Area upon the Target Tract"). The "Common Area" is defined in the OEA and includes Defendant Target's parking lot. (DE 9-1 at 110.) These provisions establish that Defendant Target—not Defendants Hempstead Turnpike and/or Minkin Management—was solely responsible for the parking lot and shopping cart return area at issue. *Compare Raia v. W & S Assocs. L.P.*, 13-cv-02164, DE 17 (E.D.N.Y July 31, 2013) (Seybert, J.) (finding fraudulent joinder and denying plaintiff's motion to remand due to defendant's sole control over premises at issue based on submitted lease agreement). Indeed, Mr. McCabe's affidavit, stating that Target maintains the parking lot and shopping cart corrals, further bolsters Defendant Target's position. (DE 9-4 ¶¶ 4–5.) Again, Plaintiff has not submitted any evidence to the contrary. As such, Target has demonstrated that Plaintiff fraudulently joined Defendants Hempstead Turnpike and Minkin Management.[7]

---

[6] "Improvements" are defined in the Ground Lease as "all buildings, landscaping, driveways, parking areas, sidewalks and other improvements . . . which from time to time are placed, constructed or located upon the Premises during the Term of this Lease." (DE 9-1 § 1.3.) As Defendant contends, this broad definition would include Target's shopping cart corral. (*See* DE 9-4 ¶ 5 (The shopping cart corrals are owned and operated by [Defendant] Target.").)

[7] Plaintiff also tacitly argues in the Affirmation of Paul R. Pepper that Target's removal is procedurally defective because the removal occurred close to eight months after Plaintiff served all Defendants and not all Defendants consented. (DE 6 ¶ 11.) This argument is easily dispelled. First, Target removed this matter on April 16, 2021, only eleven days after the case became removable when Target determined that the amount in controversy could be satisfied. (DE 9 ¶¶ 7–8; *see Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 36 (2d Cir. 2010).) And second, courts "may excuse the failure to join all defendants in the removal petition or to otherwise obtain their consent for removal where the non-consenting defendants have . . . been . . . fraudulently joined." *Star Multi Care Servs., Inc. v. Empire*

9

In sum, the undersigned respectfully recommends that Plaintiff's motion for remand based on the existence of complete diversity given Plaintiff's fraudulent joinder of Defendants Hempstead Turnpike and Minkin Management be denied.[8] Furthermore, the undersigned respectfully recommends the Court dismiss the claims against the non-diverse defendants on the same grounds as the Court did in *Raia,* 13-CV-2164, DE 17, at 7.

## CONCLUSION

Based on the forgoing, the undersigned respectfully recommends that Plaintiff's motion for remand and attorney's fees be denied and that additionally the Court dismiss the claims asserted against Defendants Hempstead Turnpike and Minkin Management.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any

---

*Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 282 (E.D.N.Y. 2014) (internal quotation marks and citation omitted). Thus, Plaintiff's arguments in this regard are baseless.

[8] Because the undersigned concludes that removal was in fact appropriate, the undersigned further recommends that Plaintiff's request for attorney's fees be denied.

10

further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
       March 16, 2022

                                     /S/ *James M. Wicks*
                                          JAMES M. WICKS
                                   United States Magistrate Judge